Carol **BECKER**, et al., Appellants,

v.

**STATE FARM MUTUAL AUTOMO-BILE INSURANCE COMPA-NY, Respondent.**

No. C6–99–288.

Court of Appeals of Minnesota.

July 20, 1999.

Review Granted Sept. 28, 1999.*

* Stringer, J., took no part in the consideration or decision of this case.

John P. Dehen, New Brighton, for appellants.

Kay Nord Hunt, Lommen, Nelson, Cole, & Stageberg, P.A., Minneapolis; and Ken D. Schueler, Dunlap & Seeger, P.A., Rochester, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge, PARKER, Judge, and SCHULTZ, Judge.[**]

## OPINION

PARKER, Judge [***]

Appellants argue the district court erred when he granted respondent summary judgment, ruling that appellants were not entitled to excess uninsured/underinsured insurance coverage because the injured appellant was an insured as defined by Minn. Stat. § 65B.43, subd. 5 (1998). Respondent argues the district court erred when he ruled that it was not prejudiced by appellant's failure to provide a proper *Schmidt v. Clothier* notice and insists that, as applied to the appellant's claim for uninsured benefits, it is entitled to an offset for workers' compensation benefits already paid. We affirm.

## FACTS

The facts underlying this appeal are undisputed. On July 2, 1992, appellant Carol Becker was injured when she was involved in a head-on collision with Augusta Watson near Everly, Iowa. Becker, a Minnesota resident, was employed by Barry Wold Trucking (Wold Trucking) and was driving a truck owned by Wold Trucking when the accident occurred. Watson, an Iowa resident, was insured by Midwest Mutual Insurance Company (Midwest Mutual).

Harco National Insurance Company (Harco) insured the Wold Trucking vehicle driven by Becker. Harco's policy was a plan of reparation security as required by Minn.Stat. § 65B.41-.71 (1998), and provided uninsured/underinsured motorist coverage for the truck in the amount of $50,000. Becker was insured under the

---

[**] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

[***] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

Harco policy because she was operating the truck with the permission of Wold Trucking. Harco paid its full uninsured/underinsured motorist limit of $50,000 to Becker. Because Becker's injuries were sustained in the course and scope of her employment with Wold Trucking, she received $52,810.96 in workers' compensation benefits from Wold Trucking's worker's compensation carrier, Employers Mutual Insurance Company (EMIC). On May 25, 1995, Carol and David Becker granted Watson a full release against all claims.

The Beckers' personal automobiles were insured under a policy issued by respondent State Farm Mutual Automobile Insurance Company (State Farm). The State Farm policy provided a combined policy limit of $100,000 for uninsured/underinsured motorist coverage. State Farm denied the Beckers' demand for excess uninsured/underinsured motorist coverage.

The Beckers commenced this action against State Farm, alleging that they are entitled to excess uninsured/underinsured motorist coverage by State Farm. In its answer, State Farm denied any obligation to the Beckers, alleged that the Beckers' failure to provide a *Schmidt v. Clothier* notice precluded them from pursuing a subrogation claim for any underinsured motorist benefits, and that, if the Beckers were entitled to uninsured motorist benefits, it was entitled to an offset for the workers' compensation benefits already paid.

The district court granted the Beckers' partial summary judgment on their claim that their failure to give a *Schmidt v. Clothier* notice was not prejudicial to State Farm. The court ruled that Watson, "would have been a very poor subrogation prospect." The Beckers brought a second motion for summary judgment, seeking to strike State Farm's defense that it was entitled to an offset for worker's compensation benefits already paid to Becker. The district court denied State Farm's request to have the issue of lack of prejudice for failure to give a *Schmidt v. Clothier* notice certified to this court and reserved the issue of whether State Farm was entitled to a collateral source offset for the previously paid worker's compensation benefits.

State Farm then moved for summary judgment, arguing that the Beckers' claim was precluded by operation of Minn.Stat. § 65B.49, subd. 3a(5) (1998), as interpreted in *Crane v. ABF Freight Sys., Inc.*, No. C2-95-1039, 1995 WL 635131 (Minn.App. Oct. 31, 1995), *review denied* (Minn. Dec. 20, 1995). The district court agreed and granted State Farm summary judgment. In addition, the court ruled that had the matter gone to trial, with regard to the Beckers' *under*insured motorist claim, State Farm would have been entitled to a collateral source offset for the worker's compensation benefits previously paid to Becker. The court ruled that such an offset was not available against the *un*insured motorist claim. An amended judgment of dismissal was entered on November 23, 1998.

## ISSUES

1. Did the district court err in ruling that Carol Becker was an insured under her employer's policy and therefore not entitled to excess coverage under her own uninsured/underinsured motorist policy?

2. Did the district court err in ruling that respondent was not prejudiced by appellants' failure to give a notice of intent to settle as required by *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983)?

3. Is respondent entitled to a collateral source offset on appellants' uninsured motorist coverage claim for previously paid workers' compensation benefits?

## ANALYSIS

■ On appeal from summary judgment, the reviewing court must determine whether any genuine issues of material fact exist and whether the district court correctly applied the law. *Offerdahl v.*

*University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). "Insurance coverage issues are questions of law for the court." *State Farm Ins. Cos. v. Seefeld*, 481 N.W.2d 62, 64 (Minn.1992) (citation omitted). This court's review is de novo where the district court grants summary judgment based on its application of statutory language to the undisputed facts of a case. *Lefto v. Hoggsbreath Enters.*, 581 N.W.2d 855, 856 (Minn.1998).

Becker argues that the district court erred when he relied on this court's unpublished decision in *Crane v. ABF Freight Sys., Inc.*, No. C2–95–1039, 1995 WL 635131 (Minn.App. Oct. 31, 1995), *review denied* (Minn. Dec. 20, 1995), to rule that she was not entitled to pursue excess uninsured/underinsured motor coverage under her State Farm policy. Becker argues that she is not covered under the primary uninsured/underinsured motorist policy issued by Harco because she does not fit the statutory definition of "insured" under Minnesota's No–Fault Act. State Farm counters, arguing that, as a permissive driver under her employer's policy, Becker meets the definition of "insured" for the purposes of the No–Fault Act and, therefore, is not entitled to excess coverage under her personal automobile policy.

■ It was error for the district court to rely exclusively on an unpublished decision of this court as the basis for its decision. *See Dynamic Air, Inc. v. Bloch*, 502 N.W.2d 796, 800 (Minn.App.1993) (holding district court committed error in relying on unpublished decision in reaching decision). Unpublished decisions of this court are not precedential but may be of persuasive value. *Id.*; *see* Minn.Stat. § 480A.08, subd. 3(c) (1998) (providing unpublished decisions of the Court of Appeals have no precedential value). We hold this error was harmless, however, because the district court need not have relied on the decision in *Crane.* Application of specific language of the No–Fault Act and existing published caselaw interpreting the No–

Fault Act mandated the district court's decision.

■ Under the No–Fault Act, an injured individual looks first to the occupied vehicle for uninsured/underinsured motorist coverage. Minn.Stat. § 65B.49, subd. 3a(5) (1998). If the individual is not an insured of the occupied vehicle, excess coverage may be sought from a policy under which the injured individual is insured. *Id.* If the injured individual is an insured of the occupied vehicle, he or she is not entitled to excess uninsured/underinsured motorist coverage from any other policy. *Id.* *See LaFave v. State Farm Mut. Auto. Ins. Co.*, 510 N.W.2d 16, 19 (Minn.App. 1993) (holding injured individual not entitled to excess coverage under her own uninsured motorist policy because she was insured under policy covering involved vehicle).

An "insured" is defined as follows:

"Insured" means an insured under a plan of reparation security as provided by sections 65B.41 to 65B.71, including the named insured and the following persons not identified by name as an insured while (a) residing in the same household with the named insured and (b) not identified by name in any other contract for a plan of reparation security complying with sections 65B.41 to 65B.71 as an insured:

(1) a spouse;

(2) other relative of a named insured or

(3) a minor in the custody of a named insured or of a relative residing in the same household with a named insured.

Minn.Stat. § 65B.43, subd. 5 (1998).

■ Becker contends that she does not satisfy the definition of an insured under Minn.Stat. § 65B.43, subd. 5, because she is not a named insured, a spouse, a relative of the named insured, or a minor in the custody of the named insured residing in the same household. The narrow definition of "insured" urged by Becker was rejected by this court in *Murphy v. Mil-*

*bank Mut. Ins. Co.*, 438 N.W.2d 390 (Minn. App.1989), *review denied* (Minn. June 9, 1989).

In that case, the wife of a truck driver who was killed while operating a truck owned by his employer brought suit against the insurer of the family-owned vehicles, seeking underinsured motorist coverage. *Id.* at 392. Following a remand from the supreme court, the district court ruled that the employer's policy provided underinsured motorist coverage by operation of law and the driver, as an employee, was an insured under this coverage. *Id.* The employer's insurer appealed, claiming that the driver was not an insured under the implied underinsured motorist coverage because he did not meet the definition of insured under Minn.Stat. § 65B.43, subd. 5. *Id.* at 394. The insurer argued that the driver did not qualify as an insured because he was not the named insured or a spouse, a relative, or a minor child of a named insured. *Id.* at 395.

Adopting the reasoning of the district court, this court rejected the insurer's argument, holding that

> "the use of the word 'including' to further explicate 'insured under a plan of reparation security' makes it clear that the definition is not limited to the named insured and persons not named who are related to or live with the named insured. * * *

> A more reasonable interpretation is that 'insured' includes employees of the named insured. The employees of an insured corporation are in actuality the objects of the corporation's automobile liability coverage."

*Id.* (quoting district court). The court noted that if the definition of "insured" were so limited, only a corporation and its subsidiaries could recover as the named insured and that such an interpretation would render automobile liability coverage meaningless because a corporation cannot suffer bodily injury. *Id.*

Under Minn.Stat. § 65B.43, subd. 5, an insured is anyone covered "under a plan of reparation security as provided by sections 65B.41 to 65B.71." As the court in *Murphy* held, the definition of insured under Minn.Stat. § 65B.43, subd. 5, is not limited to the named insured, the named insured's spouse, a relative of the named insured, or a minor in the custody of a named insured or of a relative residing in the same household with the named insured. In the present case, it is undisputed that, as an employee of Wold Trucking, Becker was covered under the Harco policy issued to Wold Trucking. The Harco policy was "a plan of reparation security as provided by sections 65B.41 to 65B.71." Minn.Stat. § 65B.43, subd. 5. Because Becker was covered under that plan of reparation security, she satisfied the definition of an insured provided in Minn.Stat. § 65B.43, subd. 5. Therefore, pursuant to Minn.Stat. § 65B.49, subd. 3a(5), Becker is not entitled to excess coverage under her personal State Farm policy. The district court did not err when he ruled that the Beckers were not entitled to excess uninsured/underinsured motorist benefits under her personal State Farm policy.

Because we conclude that Becker is not entitled to excess coverage under her personal automobile policy, we need not address the issues raised by State Farm.

### DECISION

Under the No–Fault Act, the definition of insured in Minn.Stat. § 65B.43, subd. 5 (1998) is not limited to a named insured, spouse, relative, or a minor in the custody of the named insured or a relative residing in the same household, but includes anyone covered by a plan ·of reparation security. An employee is not entitled to excess uninsured/underinsured motorist benefits under his or her personal automobile policy if the employee is afforded coverage under a plan of reparation security issued to his or her employer.

**Affirmed.**